## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ANGELA TOOKES,                          )
                                        )
            Plaintiff,                   )
                                        )
      v.                                 )        Civil Action No. 07-2049 (RBW)
                                        )
UNITED STATES OF AMERICA,                )
                                        )
            Defendant.                   )
_____)

## MEMORANDUM OPINION

        Angela Tookes, the plaintiff in this civil case, seeks damages for assault and battery, false

imprisonment, and negligent-training-and-supervision under the Federal Tort Claims Act

("FTCA"), resulting from an incident involving members of the United States Marshals Services

("Marshals Services") on January 21, 2003.  Amended Complaint ("Am. Compl.") ¶¶ 9, 18-22,

23, 25, 26, 29.  Currently before the Court is the Defendant's Motion for Partial Summary

Judgment on the plaintiff's claims of (1) false imprisonment, and (2) negligent training and

supervision.  After carefully considering the plaintiff's complaint, the defendant's motion for

partial summary judgment, and all memoranda of law relating to that motion,[1] the Court

concludes for the following reasons that the motion is granted as to the negligent-training-and-

supervision claim, and denied as to the false imprisonment claim.

---

[1] In addition to the Amended Complaint and the defendant's motion, the Court considered the following documents
in reaching its decision: (1) the Memorandum in Support of Defendant's Motion for Partial Summary Judgment
("Def.'s Mem."); (2) Plaintiff Angela Tookes' Memorandum of Points and Authorities in Opposition to Defendant's
Motion for Partial Summary Judgment ("Pl.'s Opp'n"), and (3) the Reply in Support of Defendant's Motion for
Partial Summary Judgment ("Def.'s Reply").

## I. Background

On an unknown date but relatively near in time to January 21, 2003, a Judge of the

Superior Court of the District of Columbia issued a bench warrant for the plaintiff's arrest after

she failed to comply with a subpoena.  Am. Compl. ¶ 9.  Three United States Deputy Marshals

then executed the bench warrant on January 21, 2003, and arrested the plaintiff at her home.  Id.

After taking the plaintiff into custody, the deputy marshals transported her to the Superior Court,

where she was fingerprinted and placed in a holding cell while awaiting her initial appearance

before the court.  Pl.'s Opp'n, Ex. 2 (Dec. 3, 2009 Deposition of Angela Tookes ("Tookes

Deposition")) at 94:23-25, 95:11-17.   The plaintiff was then escorted into the courtroom, at

which point she realized that she had left her United States and Nigerian passports, airline ticket,

and keys in the holding cell.  Desiring to use the passport and airline ticket as evidence that her

recent travels prevented her from complying with the aforementioned subpoena, id. at 100:3-12,

the plaintiff sought permission to reenter the holding cell to retrieve her items, but one of the

deputy marshals in the courtroom denied her request, id. at 100:23-25.  The plaintiff then

appeared before the Judge and was subsequently released from custody.  Am. Compl. ¶ 11.

After the hearing, the plaintiff was returned to the "basement" area near the holding cell,

where she asked a deputy marshal whether she could retrieve her personal items from the

holding cell.  Pl.'s Opp'n, Ex. 2 (Tookes Deposition) at 108:23-24.   The deputy marshal

eventually retrieved her items from the cell for her, but after questioning the legality of her

having two passports, the deputy marshal told the plaintiff that he was going to keep her

Nigerian passport because it was "unlawful to have two passports."  Id. at 113:6-10.  He then

instructed her to leave the basement area.  Id. at 114:11-12.  The plaintiff initially refused to

leave the basement area and instead asked the deputy marshal for his name, to which he

responded by summoning other deputy marshals and instructing them to "get her out of here." Id. at 114:12-16.  The plaintiff alleges that the deputy marshals then "forcefully tossed [her] out of a side door of the courthouse," Am. Compl. ¶ 13, and when she realized that she still did not have her keys, the plaintiff knocked on the door and asked for her keys."  Id. ¶ 14.  At this point, the plaintiff asserts that "[s]everal [deputy marshals] went outside and began to physically attack [her]."  Id. ¶ 15.  The plaintiff further asserts that, after the attack, the deputy marshals handcuffed her, "dragged" her back into the courthouse, and left her sitting on a chair.  Pl.'s Opp'n, Ex. 2 (Tookes Deposition) at 138:7-9, 12.  After some period of time, a District of Columbia police officer approached her because he had heard someone "crying [for] a long time."  Id. at 141:4.  The officer then called an ambulance.  Am. Compl. ¶ 15.  While waiting for the ambulance to arrive, the courthouse medical clinic evaluated the plaintiff.  Id. ¶ 17.

On July 3, 2003, the plaintiff submitted a Standard Form 95 ("SF-95") to the Marshals Service,[2] Def.'s Mem. at 3, which is a form used by a party seeking redress for tort claims against the United States, GAF Corp. v. United States, 818 F.2d 901, 904 n.16 (D.C. Cir. 1987). The Marshals Service did not respond to the plaintiff's claim.  Am. Compl. ¶ 4.  As a result of the Marshals Service's non-response, the plaintiff filed her Complaint in this Court on November 13, 2007, which she later amended on January 8, 2009.  See 28 U.S.C. § 2675(a).[3]

---

[2] The plaintiff's Amended Complaint states that "[o]n July 2, 2003, Ms. Tookes submitted a completed SF-95 Form to the General Counsel of the [United States] Marshals Service . . . ."  Am. Compl. ¶ 3 (emphasis added).  However, the Defendant's Statement of Undisputed Material Facts states that the "[p]laintiff submitted a Standard Form 95 . . . to the USMS dated July 3, 2003."  Id. ¶ 2 (emphasis added).  Because the date indicated by the defendant in its statement of undisputed facts has not been disputed by the plaintiff, the Court finds that the correct date is July 3, 2003.

[3] 28 U.S.C. § 2675(a) (2006) provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal

(continued . . .)

In her Amended Complaint, the plaintiff asserts that "[t]he . . . [deputy m]arshals intentionally and maliciously assaulted and battered [her]," id. ¶ 19, and that "[a]s a direct and proximate result of the assault and battery, [she] suffered permanent and serious physical injuries," id. ¶ 21, which led to "medical expenses, lost wages, [and] pain and suffering," id. ¶ 22. Additionally, the plaintiff claims that the "[deputy m]arshals falsely imprisoned and arrested [her] by confining her again in a cellblock without legal justification and without her consent." Id. ¶ 24. The plaintiff further asserts that the "Marshal Service was under a duty to properly train and supervise the actions of the . . . [deputy m]arshal[s] in their employ," id. ¶ 27, and that "[t]he . . . Marshal Service breached this duty to properly train and supervise the actions of the . . . [deputy m]arshals, which was the proximate cause of the permanent and serious physical injuries, . . . medical expenses, loss of income[,] and pain and suffering by [the plaintiff]," id. ¶ 28. For these claims, the plaintiff seeks compensatory and punitive damages of $3 million ($1 million per count), the costs associated with these proceedings, "and any and all relief justice so requires." Id. ¶¶ 22, 25, 29.

The defendant has now moved for partial summary judgment on the plaintiff's negligent-training-and-supervision claim, as well as her claim for false imprisonment. As to the plaintiff's negligent-training-and-supervision claim, the defendant provides four arguments in support of its assertion that the Court lacks jurisdiction over this claim. Def.'s Mem. at 8. First, the defendant asserts that "claims involving the training or supervision of government personnel are excluded from the FTCA's waiver of sovereign immunity" pursuant to the discretionary function

---

(. . . continued)

agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

exception, id. at 8,  and "[t]hus, [the] plaintiff cannot bring a claim of negligent training and supervision [against the Marshals Service] under the FTCA," id. at 9.  Second, the defendant argues that the "[p]laintiff failed to exhaust [all] administrative remedies for her negligent[-]training[-]and[-]supervision claim," id. at 10, because she "did not provide the [Marshals Service] with any notice in her administrative claim that would have led to an investigation into the training or supervising of [deputy] marshals with no alleged prior or subsequent misbehavior," id. at 11.   Third, the defendant argues that the negligent-training-and-supervision claim is without merit "because [the p]laintiff has not even alleged any facts, much less produced evidence, that support such a claim" and instead relies on "vague and conclusory assertions that the [Marshals Service] should [have] done more to train its deputies." Id. at 12.  Fourth, the defendant states that the "negligent[-]training[-]and[-]supervision claim fails because [the plaintiff] has not identified an expert to establish the standard of care applicable to the training and supervision of Deputy U.S. Marshals," id. at 13, which "generally is necessary [to bring] claims of negligent[-]training[-]and[-]supervision of police officers," id. (quoting Cotton v. Dist. of Columbia, 541 F. Supp. 2d 195, 207 (D.D.C. 2007)).

With regard to the plaintiff's false imprisonment claim, the defendant argues that summary judgment is appropriate because "[i]n her SF[-]95, [the p]laintiff provided no notice to the [Marshals Service] of any false arrest and imprisonment claim"; specifically, the defendant contends that the SF-95 "makes no reference to the [p]laintiff being reincarcerated in a cellblock, nor does it allege any injury caused by a false arrest or imprisonment apart from physical injuries compensable under the tort of assault and battery." Id. at 15.  In addition, the defendant argues that the plaintiff provides contradictory accounts of the events related to the alleged false imprisonment in various documents, such as the plaintiff's Amended Complaint, the plaintiff's

SF-95, and the transcript of the plaintiff's deposition, id. at 17, and that "a plaintiff cannot create a genuine issue of material fact by contradicting her own testimony," id. (citing Pyramid Sec., Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir. 1991)).  The defendant also argues that the plaintiff's claims for total damages should be limited to $250,000 because that is the amount the plaintiff sought in her administrative complaint submitted to the Marshals Services. Id. at 1.

The plaintiff opposes the defendant's motion for partial summary judgment, but she only responds to the defendant's arguments regarding the false imprisonment claim.  The plaintiff argues that she exhausted all of the administrative remedies available to her for the false imprisonment claim because her SF-95 states that "[she] was assaulted and falsely arrested." Pl.'s Opp'n at 4.  Although the plaintiff acknowledges that she used the words "falsely arrested" rather than "falsely imprisoned," she argues that "there is no real difference as a practical matter between false arrest and false imprisonment."  Id. at 4 n.1 (citing Shaw v. May Dep't Stores Co., A.2d 607, 609 n.2 (D.C. 1970)).   Concerning the defendant's challenge to the merits of her false imprisonment claim, the plaintiff characterizes that argument as erroneously "rest[ing] . . . on the notion that [she] was not incarcerated in the cellblock twice," id. at 5, when in fact "[w]hether [she] was falsely imprisoned inside a cellblock or another location (i.e. the Marshals' office) is irrelevant" because "[a]n unlawful imprisonment claim simply requires '[a]n unlawful deprivation of freedom of locomotion for any amount of time, by actual force or a threat of force,'" id. (quoting Marshall v. District of Columbia, 391 A.2d 1374, 1380 (D.C. 1978)). Indeed, the plaintiff, in proffering evidence in support of her false imprisonment claim, relies on her deposition in which she "describ[ed] in detail" when she "was handcuffed by the [deputy] marshals and dragged to their office."  Id.  As to the defendant's efforts to limit her damages, the

plaintiff argues that her total damages are not limited to the amount claimed in the administrative

claim because the existence of "newly discovered evidence and/or intervening facts" justifies

damages in excess of what she sought during the administrative process.  Id. at 2.

In response to the plaintiff's opposition memorandum, the defendant argues that

the "[p]laintiff . . . has abandoned her negligent[-]training[-]and[-]supervision claim" because she

failed to address any of the arguments the defendant made regarding that claim, and "[t]he Court

should, accordingly, treat the arguments as conceded."  Def.'s Reply at 1.  As for the false

imprisonment claim, the defendant further argues that the plaintiff's SF-95 "does not present a

false imprisonment or arrest claim," id. at 8, because the "administrative complaint . . . makes no

reference to [the plaintiff] being re-incarcerated in a cellblock," and because the administrative

complaint "also fails to allege any injury caused by a false arrest or imprisonment apart from the

physical injuries she alleges were caused by the alleged assault and battery," id.

Additionally, the defendant contends that the plaintiff is attempting to "re-characterize

the basis for her false imprisonment claim in her opposition" memorandum by arguing that "she

was falsely arrested when the [Marshals Service] alleged[ly] brought her back into the Superior

Courthouse (after removing her from the building) and plac[ing] her in a room."  Id. at 9.  This

re-characterization is, according to the defendant, an attempt by the plaintiff to "effectively

amend [the] Amended Complaint," and should be rejected by the Court because "there is no

genuine issue of material fact on [the p]laintiff's false imprisonment and arrest claim"; however,

the defendant acknowledges that "[i]f the Court permits [the plaintiff] to base her false

imprisonment claim on her allegedly being brought back inside the Superior Courthouse, then

the United States agrees that there would be a disputed issue of material fact on that portion of

the claim."  Id. at 11 n.2.  The defendant reiterates its limitation-of-damages argument, asserting

the absence of any newly discovered evidence because "Ms. Tookes has failed to identify any new injuries that she did not know, or could not have known, about when she filed her SF[-]95 with the [Marshals Services]." Id. at 6.

## II. Standard of Review

The Court initially notes that, in its motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, the defendant raises many arguments relating to the FTCA that are purely jurisdictional in nature. The appropriate vehicle for these contentions, however, is not a summary judgment motion, but a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. See Williams v. United States, 50 F.3d 299, 304-05 (4th Cir. 1995) (holding that, in ruling on applicability of FTCA's discretionary function exception, "the district court should have dismissed the suit for want of jurisdiction under Rule 12(b)(1)" rather than "granting summary judgment pursuant to Rule 56(c)" and discussing the distinct procedural implications associated with the application of the two rules); Broussard v. United States, 989 F.2d 171, 177 (5th Cir. 1993) (per curiam) ("as a general rule, whenever the United States has not waived its sovereign immunity, the district court should dismiss the complaint for want of subject matter jurisdiction rather than dismissing by granting a motion for summary judgment."); see also Bank One Tex. v. United States, 157 F.3d 397, 403 n. 12 (5th Cir. 1998) ("Granting summary judgment is an inappropriate way to effect a dismissal for lack of subject matter jurisdiction . . . [because] the granting of summary judgment is a disposition on the merits of the case" (quotation marks and citation omitted)). Insofar as the defendant's motion asserts that the Court lacks jurisdiction over the plaintiff's claims without referencing the underlying merits of the

claims, then, the Court will treat the motion as one for Rule 12(b)(1) dismissal.[4]  But, to the extent that the defendant challenges the plaintiff's FTCA claims on both jurisdictional and merit-based grounds, the Court will apply the Rule 56 standard for summary judgment.  See Loughlin v. United States, 230 F. Supp. 2d 26, 36-37 (D.D.C. 2002) (Huvelle, J.) (treating government's 12(b)(1) motion to dismiss FTCA claim as motion for summary judgment because  "the jurisdiction question [was] inextricably intertwined with the merits of the cause of action."). Both standards are set forth below.

## A.      Rule 12(b)(1) Motion to Dismiss

When a party moves to dismiss under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction."  Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004).  A court considering a Rule 12(b)(1) motion must accept "'all of the factual allegations in the complaint as true.'"  Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005) (quoting Sloan v. U.S. Dep't of Hous. & Urban Dev., 236 F.3d 756, 759 (D.C. Cir. 2001)) (alteration omitted).  In addition to considering the undisputed facts in the record in resolving a Rule 12(b)(1) motion, Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992), the Court may also consider "materials outside the pleadings," Jerome Stevens, 402 F.3d at 1253.

## B.      Rule 56 Motion for Summary Judgment

To grant a motion for summary judgment under Federal Rule of Civil Rule 56, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the

---

[4] While the Court would have considered denying the defendant's motion without prejudice, it appears that the jurisdictional issues are presented adequately in the record for the Court to render a ruling on the defendant's motion without further briefing on the matter.

outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  When ruling on a motion for summary judgment, "the court must draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility determinations or

weigh the evidence." Reeves v. Sanderson  Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)

(citations omitted).  The defendant has the burden of demonstrating the absence of a genuine

issue of material fact, and that the plaintiff "fail[ed] to make a showing sufficient to establish the

existence of an element essential to [her] case, and on which [she] will bear the burden of proof

at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

     In responding to a summary judgment motion, the plaintiff "must do more than simply

show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus.

Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, the plaintiff must not rely

on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are]

genuine issue[s] for trial." Anderson, 477 U.S. at 248 (internal quotation marks and citation

omitted) (second omission in original).  Thus, "[i]f the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

### III. Legal Analysis

     The issues before the Court are several.  First, the Court must decide if the plaintiff's

negligent-training-and-supervision claim is barred by the FTCA's discretionary function

exception.  Second, the Court must determine if the plaintiff's description of her false

imprisonment claim in her SF-95 constitutes sufficient notice to the Marshals Service under the

FTCA.  Third, the Court must determine whether the plaintiff is re-characterizing the basis for

her false imprisonment claim in a manner that constitutes an impermissible amendment of her

Amended Complaint.  Fourth, the Court must assess whether there is a disputed genuine issue of

material fact with regard to the plaintiff's false imprisonment claim, or whether the plaintiff has simply manufactured contradictory testimony in an attempt to create an issue of material fact. Finally, the Court must rule on whether the plaintiff is permitted to seek damages exceeding $250,000 as a result of intervening evidence that was newly discovered after the submission of her administrative complaint.  The Court will consider each issue in turn.

## A.      Negligent-Training-and-Supervision Claim

The defendant raises several arguments in seeking summary judgment on the plaintiff's negligent-training-and-supervision claim.  The Court need not address them all, however, because the defendant has sufficiently demonstrated that this Court lacks subject-matter jurisdiction to entertain the claim.

"The FTCA grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims."  Sloan v. U.S. Dep't of Hous. & Urban Dev., 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674).  This jurisdictional grant and waiver of immunity is subject to a number of exceptions, however.  Id. At issue here is the discretionary function exception, which covers "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  As the Circuit has explained, "[t]he discretionary function exception is a barrier to subject matter jurisdiction," and "[a] district court thus has no authority to address the merits of claims allegedly arising under the FTCA in cases in which the plaintiff is unable to overcome this jurisdictional barrier."  Loughlin v. United States, 393 F.3d 155, 162 (D.C. Cir. 2004).

The Supreme Court in <u>United States v. Gaubert</u>, 499 U.S. 315 (2001), formulated a two-step analysis for determining whether a challenged governmental action is protected as a discretionary function.  First, the act must "involve an element of judgment or choice," and not one where a "federal statute, regulation[,] or policy specifically prescribes a course of action for an employee to follow."  <u>Id.</u> at 327.  Second, the judgment exercised in carrying out the governmental action must be "of the kind that the discretionary function exception was designed to shield," <u>id.</u> at 322-23, i.e., a decision "grounded in social, economic[,] and political policy," <u>id.</u> at 323.

Both parts of the <u>Gaubert</u> test are satisfied here.  As to the first prong, the defendant correctly notes that the plaintiff fails to cite any "statute, regulation, or policy that specifically prescribes how [the Marshals Service] should train or oversee deputy marshals."  Def.'s Mem. at 8.  And, in light of the plaintiff's failure to rebut this argument in her opposition memorandum, she has conceded that there is no statute, regulation, or policy that governs the supervision and training of the deputy marshals involved in this case.

With regard to the second <u>Gaubert</u> prong, the governing case law in this Circuit firmly supports a finding that the supervision and training of deputy marshals are discretionary governmental functions grounded in social, economic, and political policy.  In <u>Burkhart v. Wash. Metro. Area Transit Auth.</u>, 112 F.3d 1207, 1217 (D.C. Cir. 1997), for example, the Circuit held that the hiring, training, and supervision of personnel working for the Washington, D.C. regional public transportation agency (WMATA) fell within the discretionary function exception. Specifically, the Circuit concluded that

> [t]he hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience[,] and employer intuition . . . Similarly, supervision decisions involve a complex balancing of budgetary

> considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past.  Such decisions are surely among those involving the exercise of political, social, or economic judgment.

Id. (quotation marks and citations omitted).  Although the Circuit's discussion above was directed to WMATA personnel, its analysis is equally applicable, if not more so, to the United States Marshals Service, given its responsibility to provide security at the District of Columbia Superior Court complex.  See Bostic v. U.S. Capitol Police, 644 F. Supp. 2d 106, 110 (D.D.C. 2009) (Sullivan, J.) ("The [Capitol Police's] training and supervision of employees is exactly the kind of discretionary function that is not subject to judicial second-guessing.") (citing Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 81-82 (D.D.C. 2005)); see also Macharia v. United States, 334 F.3d 61, 66-68 (D.C. Cir. 2003) (agreeing that "[d]ecisions regarding . . . how much training should be given to guards and embassy employees, and the amount of security-related guidance that should be provided necessarily entail[ed] balancing competing demands for funds and resources" and were therefore barred under the second step of the discretionary function test (first alteration in original)).  Because the plaintiff's negligent-training-and-supervision claim challenges governmental conduct falling within the FTCA's discretionary function exception, the Court must dismiss the claim for lack of subject matter jurisdiction.

**B.      False Imprisonment Claim**

     **i.      Sufficiency of the Plaintiff's Administrative Complaint**

Turning to the plaintiff's false imprisonment claim, the Court must initially consider the defendant's argument that the plaintiff failed to properly present her claim to the Marshals Service before filing this action.  The FTCA directs that, prior to bringing suit, "the claimant

shall have first presented the claim to the appropriate [f]ederal agency and his claim shall have

been finally denied by the agency in writing and sent by certified or registered mail."

28 U.S.C. § 2675(a).  This administrative exhaustion component of the FTCA, also known as

the Act's "presentment requirement," is a "jurisdictional prerequisite to filing suit."  GAF Corp.

v. United States, 818 F.2d 901, 904 (D.C. Cir. 1987).  In this Circuit, a claim is considered

adequately presented when a claimant provides the agency with "(1) a written statement

sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a

sum-certain damages claim."  Id. at 905.  The rationale for these requirements is that "[n]otice of

an injury will enable the agency to investigate and ascertain the strength of a claim; [and] the

sum-certain statement of damages will enable it to determine whether settlement or negotiations

to that end are desirable."  Id. at 919-20.

The standard for sufficient notice under the FTCA is minimal.  Id. at 920.  Moreover, the

FTCA only imposes on claimants the burden of providing notice, not the burden of

substantiating claims.  See id. at 921-22 (reversing dismissal by district court because it imposed

on claimants the burden of demonstrating the merits of their claims at the agency level as a

jurisdictional prerequisite to filing suit).  The claimant need not even provide explicit notice to

the government of all theories of liability underlying a claim, so long as the government's

investigation of one claim revealed, or a reasonably prudent investigation would have revealed,

other theories of liability.  See Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1980)

(concluding that written notice of one theory of liability based on a set of facts is sufficient to put

an agency "on notice that its actions . . . were part of the chain of events" that resulted in the

event that serves as the basis for the claim, and determining that if the "[g]overnment's

investigation of the [plaintiff's] claim should have revealed theories of liability other than those

specifically enumerated [in the administrative complaint,] those theories can be properly

considered part of the claim" asserted in the plaintiff's judicial complaint); Tsaknis v. United

States, 517 F. Supp. 2d 295, 299 (D.D.C. 2007) (adopting the Rise standard for assessing

sufficient notice).

Applying these principles to the present case, the Court concludes that the plaintiff

provided the defendant with sufficient notice as required by the FTCA.  As noted, the plaintiff's

administrative claim form, the SF-95, states that she "was assaulted and falsely arrested by U.S.

Marshal[]s."  Def.'s Mem., Ex. 1 (July 3, 2003 SF-95) at 3.  While there is no indication that the

Marshals Service conducted an investigation into the assault and false arrest claims after

receiving the plaintiff's SF-95, the Court finds that a reasonably prudent investigation would

have revealed the plaintiff's false imprisonment claim as another likely theory of liability, as

both the false arrest and false imprisonment allegedly occurred while the plaintiff was at the

Courthouse, and the same facts serve as the basis for both claims.  See Def.'s Mem., Ex. 1 (July

3, 2003 SF-95) at 3 ("The Marshalls then got out their handcuffs and put them on Ms. Tookes.

They dragged her to their office and said, 'you sit down here.'").  And although the plaintiff's

SF-95 does not use the term "false imprisonment," it does states that the plaintiff was "falsely

arrested," id.  (emphasis added), which the Court finds to provide sufficient notice of the false

imprisonment claim because "there is 'no real difference as a practical matter between false

arrest and false imprisonment,'" Creecy v. District of Columbia, No. 10-cv-841, 2011 WL

1195780, at *5 n.3 (D.D.C. Mar. 31, 2011) (quoting Shaw v. May Dep't Stores Co., 268 A.2d

607, 609 (D.C. 1970)).  The Court, therefore, concludes that the false imprisonment claim was

encompassed in the plaintiff's administrative claim and that the defendant's attack on the adequacy of notice provided by the plaintiff must be rejected.[5]

### ii.    Alleged Re-characterization of the False Imprisonment Claim

The defendant asserts that the plaintiff's description of the events in her opposition memorandum is nothing more than an "effort to re-characterize the basis for her false imprisonment claim." Def.'s Reply at 9.  The defendant contends that the plaintiff does not allege being brought back into the Courthouse in her original or Amended Complaint, as she does later in her opposition memorandum, and thus she should be barred from "effectively amend[ing] her [A]mended [C]omplaint" to bring a false imprisonment claim based on this new factual assertion.  Id.

Unlike the defendant, however, the Court does not find the plaintiff's assertions regarding her purported re-incarceration to be untethered from what she alleges in her pleadings.  In her Amended Complaint, the plaintiff states that "[w]hile being escorted out of the court by the US Marshals, one Marshal alleged that Ms. Tookes had two passports.  This incited a Marshal to incarcerate Ms. Tookes again."  Am. Compl. ¶ 12 (emphasis added).  While it is not clear if the incarceration referenced by the plaintiff in her Amended Complaint occurred while she was inside or outside of the Courthouse, it is clear that the plaintiff is alleging an additional detention "while being escorted out of the court."  Id.  Furthermore, the plaintiff's description in her opposition directly quotes her SF-95 form, which the Marshals Service received prior to the

---

[5] In challenging the sufficiency of the plaintiff's SF-96, the defendant emphasizes that the plaintiff "fails to allege any injury caused by a false arrest or imprisonment apart from the physical injuries she alleges were caused by the alleged assault and battery." Def.'s Reply at 8.  This argument is unavailing for two reasons.  First, the plaintiff is not required to allege a physical injury to sustain a false imprisonment claim.  See Phillips v. District of Columbia, 458 A.2d 722, 725 (D.C. 1983) ("the single fact of imprisonment, the deprivation of one's right to move about, is compensable").  Second, and perhaps more to the point, the allegations in the plaintiff's administrative claim are to be evaluated not for legal sufficiency, as the defendant seems to suggest, but for their sufficiency in providing enough notice to the defendant to enable it to "investigate and ascertain the strength of [the] claim." GAF, 818 F.2d at 919-20.  As explained above, the Court deems this notice-sufficiency standard to be satisfied.

initiation of this lawsuit.  Simply put, the plaintiff's contention that the deputy marshals falsely

imprisoned her after removing her from the Superior Court is a reiteration, rather than a re-

characterization, of the allegations in the plaintiff's SF-95 and Amended Complaint, and as such,

provides no basis for summary judgment being granted to the defendant.

### iii.      Existence of a Genuine Issue of Fact as to False Imprisonment Claim

The defendant next argues that while the record reflects contradictory testimony by the

plaintiff regarding her false imprisonment claim, these inconsistencies do not create a genuine

factual dispute sufficient to preclude summary judgment because the "plaintiff cannot create a

genuine issue of material fact by contradicting her own testimony."  Def.'s Reply at 10 (citing

Pyramid Sec., Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir. 1991)).  The defendant

concedes, however, that "if the Court permits [the plaintiff] to base her false imprisonment claim

on her allegedly being brought back inside the Superior Court[], then . . . there would be a

disputed issue of material fact on that portion of the claim."  Def.'s Reply at 11 n.2.  It appears

that District of Columbia law does indeed provide a basis for the plaintiff to pursue a false

imprisonment claim resulting from her allegation that the deputy marshals "dragged" her back

into the Superior Court without legal justification.  Pl.'s Opp'n, Ex. 2 (Tookes Deposition) at

138:7-9, 12; see Marshall v. Dist. of Columbia, 391 A.2d 1324, 1380 (D.C. 1978)  ("In the

District of Columbia, the gist of any complaint for . . . false imprisonment is an unlawful

detention . . . An unlawful deprivation of freedom of locomotion for any amount of time, by

actual force or a threat of force, is sufficient" (citation omitted)).  The Court therefore finds that

the existence of a genuine issue of material fact precludes the Court from awarding the defendant

summary judgment on the plaintiff's false imprisonment claim.

**C.**     **Amount of the Plaintiff's Potential Recovery**

The defendant argues that because the plaintiff only sought $250,000 in damages in her

SF-95, her recovery at trial must be limited to that amount, rather than the $3,000,000

($1,000,000 per count) she seeks to recover in her Amended Complaint.  See Def.'s Mem., Ex. 1

(SF-95) at 1; Am. Compl. ¶¶ 22, 25, 29.  As a general matter, the FTCA limits the amount of

damages sought by an aggrieved party to the amount requested in an administrative claim.  28

U.S.C. § 2675(b) (2011).  The Act does provide an exception, however, in those circumstances

where "the increased amount is based upon newly discovered evidence not reasonably

discoverable at the time of presenting the claim to the federal agency, or upon allegation and

proof of intervening facts, relating to the amount of the claim."  Id.  Another member of this

Court has defined such "newly discovered evidence" as "evidence that materially differs from

the worst-case prognosis of which the claimant knew or could reasonably have known when he

filed the claim, not evidence that merely bears on the precision of the prognosis."  Calva-

Cerqueira v. United States, 281 F. Supp. 2d 279, 301 (D.D.C. 2003) (Urbina, J.) (citations

omitted).  "[I]nformation [that] merely concerns the precision with which the nature, extent, or

duration of a claimant's condition can be known" fails to surmount the bar created by the FTCA.

Lebron v. United States, 279 F.3d 321, 330 (5th Cir. 2002).  "Requiring a plaintiff to guard

against a worst-case scenario" in preparing an administrative claim and declaring sum-certain

damages is in accordance with the FTCA's purpose of encouraging settlement.  Id. at 330-31.

The plaintiff has the burden of proving that she is entitled to invoke the sum-certain

exception.  See Murphy v. United States, 833 F. Supp. 1199, 1203 (E.D. Va. 1993).  In

attempting to meet that burden, the plaintiff presents three arguments for why she should be

allowed to seek damages above the amount she sought in her SF-95.  First, she argues that "she

did not know, nor could she reasonably know, that her injuries would persist such that she would never return to work," and that "she did not know the extent and cost of medical care that would be required due to her injuries." Pl.'s Opp'n at 3. Second, the plaintiff argues that "she . . . was not able to quantify the emotional damages she suffered" when she submitted her SF-95, and "in fact, [she was] subsequently diagnosed with [post-traumatic stress disorder]." Id. Third, the plaintiff asserts that her damages are not capped because of inflation. Id. (citing McMichael v. United States, 856 F.2d 1026, 1035-36 (8th Cir. 1988).

Based on the current record, the Court finds that the plaintiff knew, or should have known, that under a worst-case scenario, her injuries could persist to the point that she would be unable to return to work. As the defendant correctly points out, in her SF-95 the plaintiff "expressly stated that her injuries were 'permanent and serious[,]' and that they would require her 'to seek ongoing medical treatment.'" Def.'s Reply at 4 (quoting Def.'s Mem., Ex. 1 (SF-95) at 3). Furthermore, the plaintiff's own physician noted that she was unable to work in 2003 "[b]ecause of the various physical findings and test results that were" conducted to determine the extent of the plaintiff's injuries. Def.'s Mem., Ex. 2 (April 20, 2010 Deposition of Richard S. Meyer, M.D.) at 37:18-21. Having allegedly suffered injuries that prevented her from working and that continued to persist months after the incident, the plaintiff should have known when she filed her SF-95 with the Marshals Service that permanent disabilities were a possibility as a worst-case scenario, that she would need extensive and ongoing medical care, and that she would be unable to reenter the work force. Thus, the Court concludes, based on the record before it, that the plaintiff's recovery for her physical damages must be limited to $250,000.

Similarly, the Court is not persuaded that over the course of this litigation, the rate of inflation has increased to such a degree that would warrant the Court allowing the plaintiff to

exceed the damages she sought in her SF-95.  "Inflation has been a permanent fixture in our economy for many decades," Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 538 (1983), and thus the Court finds that normal inflation rates, by definition, cannot constitute an "intervening fact" or "newly discovered evidence."  28 U.S.C. § 2675(b).  To be sure, there may be instances where abnormal inflation rates could amount to unforeseeable intervening acts, see McMichael v. United States, 856 F.2d at 1035 (upholding "district court's finding that the inflation which occurred between 1976 and 1986 was unforeseen" based on "[a]ffidavits of two experts [who] stat[ed] that the value of the dollar declined about 50% from 1976 to 1986[,] and that this decline was unforeseeable"), but the plaintiff has not presented any evidence in this case of "unique circumstances" that would support a finding that the inflation rate that occurred after the plaintiff submitted her SF-95 was unforeseeable.  Thus, the Court also rejects the plaintiff's reliance on inflation as a basis for her request to seek damages above the amount listed on her SF-95.

The plaintiff's emotional injuries, however, do justify invocation of the sum-certain exception.  In Zurba v. United States, 318 F.3d 736, 741-42 (7th Cir. 2003), the Seventh Circuit held that an aggrieved party's emotional injuries constituted "newly discovered evidence" because the plaintiff there did not know she suffered from a specific condition until five years after the administrative claim was submitted, even though she had been aware that she suffered some form of emotional distress prior to filing her administrative claim.  Similarly, the plaintiff in this case was diagnosed with post-traumatic stress disorder after filing her SF-95.  See Pl.'s Opp'n, Ex. 2 (Dec. 3, 2009 Deposition of Angela Tookes) at 78:21 – 79:14.  And there is nothing in the record showing that the plaintiff should have known that she could eventually be diagnosed as suffering from the specific psychological disorder of post-traumatic stress disorder.

Accordingly, the Court concludes that the plaintiff may seek to acquire damages in excess of the damages requested in her SF-95, but only to the extent that she seeks greater recovery for damages related to her purported post-traumatic stress disorder.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must dismiss the plaintiff's negligent-training-and-supervision claim for lack of subject matter jurisdiction, and that the defendant's motion for partial summary judgment must be denied as to the plaintiff's false imprisonment claim.  In addition, the Court concludes that the plaintiff may seek damages in excess of $250,000, but only insofar as the additional damages are based on her alleged post-traumatic stress disorder.

**SO ORDERED** this 19th day of September, 2011.[6]

REGGIE B. WALTON
United States District Judge

---

[6] An order will be issued contemporaneously with this memorandum opinion (1) dismissing the plaintiff's negligent-training-and-supervision claim for lack of subject matter jurisdiction; (2) denying the defendant's motion for partial summary judgment as to the plaintiff's false imprisonment claim; and (3) allowing the plaintiff to seek damages in excess of the $250,000 demand for damages set forth in her SF-95, but only to the extent that she is seeking additional damages related to her alleged post-traumatic stress disorder.