# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANGELA TOOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2049 (RBW) |
| | ) | **(SEALED)** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Angela Tookes, seeks damages for assault and battery and false imprisonment under the Federal Tort Claims Act ("FTCA"). Amended Complaint ("Am. Compl.") ¶¶ 8–17. Currently before the Court is the Defendant's Motion In Limine ("Def.'s Mot.") requesting an order limiting the plaintiff's possible damages to $250,000 and seeking to preclude the plaintiff from offering Dr. Stephen Peterson as an expert witness. Upon consideration of the defendant's motion,[1] the Court concludes that it must grant the defendant's motion in part, and deny it in part for the reasons set forth below.

## I. BACKGROUND

The plaintiff alleges that members of the United States Marshals Service ("Marshals Service") assaulted and falsely imprisoned her at the District of Columbia Superior Court on January 21, 2003, when the plaintiff was arrested for failure to comply with a subpoena issued by that court. Am. Compl. ¶¶ 8–17. The plaintiff filed an administrative claim with the Marshals

---

[1] In addition to the submissions already identified, the Court considered (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion In Limine ("Def.'s Mem."), (2) the plaintiff's Complaint ("Compl."), (3) the Defendant's Motion for Partial Summary Judgment ("Def.'s Mot. Summ. J."), (4) the Defendant's Memorandum in Support of Defendant's Motion for Partial Summary Judgment ("Def.'s Mem. Summ. J."), (5) Plaintiff Angela Tookes' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl.'s Opp'n Summ. J."), and (6) the Court's September 19, 2011 Memorandum Opinion ("Mem. Op.").

Service, Am. Compl. ¶ 3, claiming $250,000 in damages for "permanent and serious injuries, which have required her to seek ongoing medical treatment," Pl.'s Opp'n Summ. J., Exhibit ("Ex.") B at 3.  The plaintiff's original complaint in this Court asserted claims of assault and battery, false imprisonment and arrest, and negligent training and supervision, Compl. ¶¶ 17–26, and sought damages of $250,000 for "permanent and serious physical injuries . . . [p]lus mental anguish." Compl. ¶ 16.  The plaintiff subsequently amended her complaint to request $1,000,000 in damages on each of the three counts.  Am. Compl. ¶¶ 22, 25, 29.

After the completion of discovery, the defendant moved for partial summary judgment on two of the plaintiff's claims and on her claim for compensatory damages above $250,000, the amount sought in her administrative claim.  See Def.'s Mot. Summ. J. at 1.  Regarding the limitation on damages, the defendant argued that 28 U.S.C. § 2675(b) (2006) restricted the plaintiff's recovery to the amount she sought in her administrative claim unless the increased amount was due to "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency" or "allegation and proof of intervening facts, relating to the amount of the claim." Def.'s Mem. Summ. J. at 5 (quoting § 2675(b)).  Among other things, the plaintiff argued that she "was not able to quantify the emotional damages she suffered" at the time she filed her administrative claim and therefore her "increased emotional distress" satisfied the exception under § 2675(b) for "newly discovered evidence" or "intervening facts." Pl.'s Opp'n to Summ. J. at 3.  In support of this contention, the plaintiff represented that she "stated in her deposition that she was, in fact, subsequently diagnosed with [post-traumatic stress disorder]." Id.

In a Memorandum Opinion issued on September 19, 2011, the Court held that the plaintiff was permitted to seek damages in excess of the amount sought in her administrative claim "to the extent that she seeks greater recovery for damages related to her purported post-

traumatic stress disorder." Mem. Op. at 21. The Court reasoned that the plaintiff's emotional injuries satisfied the "newly discovered evidence" exception in § 2675(b) because she "was diagnosed with post-traumatic stress disorder after filing her [administrative claim]" and "there is nothing in the record showing that the plaintiff should have known that she could eventually be diagnosed as suffering from the specific psychological disorder of post-traumatic stress disorder." Id. at 20.

Following the Court's issuance of the Memorandum Opinion, the Court granted the parties' joint motion to reopen discovery "for the limited purpose of completing discovery on Plaintiff's damages claims." See Def.'s Mem. at 4; Order, October 4, 2011. During this second discovery period, the defendant issued subpoenas to numerous medical providers. Def.'s Mem. at 5. It became apparent from the documents produced in response to the subpoenas that the plaintiff had not provided all of the medical records requested in discovery, but only those "related to her alleged injuries in this case." See id.

The records attached to the defendant's motion in limine show that the plaintiff was diagnosed with post-traumatic stress disorder in 2001, 2002, and 2003. See Def.'s Mem., Ex. E at 5 (records dated March 5, 2001, indicate a possible diagnosis of post-traumatic stress disorder); id. at 6 (records dated June 27, 2001, indicate same); id. at 7 (records dated September 19, 2002, indicate diagnosis of post-traumatic stress disorder); id. at 9 (records dated June 19, 2003, indicate same). The records also indicate that the plaintiff experienced multiple traumatic events before and after the alleged incidents at issue in this case, including numerous incidents of domestic violence. See Def.'s Mem. Ex. E at 1 (records dated June 2, 2005, indicate that the plaintiff's nose was fractured due to domestic violence); id. at 2 (records dated December 7, 2010, indicate that the plaintiff's second husband was abusive and injuries caused by the

3

husband caused her to miscarry during pregnancy); id. at 4 (note dated February 15, 2001, in records indicates that the plaintiff was threatened by a "roommate" at gunpoint).

The defendant now moves the Court for an order limiting the plaintiff's recovery to the amount sought in her administrative claim, arguing that the Court based its ruling on a factual record that was rendered incomplete by the plaintiff's failure to produce her medical records in compliance with her discovery obligations and that the information contained in the subpoenaed documents demonstrates that the plaintiff's post-traumatic stress disorder was not "newly discovered evidence" or an "intervening fact." Def.'s Mem. at 7–8. The defendant also seeks to preclude the plaintiff from offering Dr. Stephen Peterson, the plaintiff's treating psychiatrist, as an expert. Id. at 11. The plaintiff indicated at the October 12, 2012 status conference in this case that she would not file a response to the defendant's motion, and no response has been filed.[2]

## II. ANALYSIS

### A. Limitation on damages

As an initial matter, since the Court has already considered and ruled on whether the plaintiff's damages must be limited to the amount sought in her administrative claim, the defendant's motion with respect to this issue is more properly brought as a motion to reconsider an interlocutory decision under Federal Rule of Civil Procedure 54(b), and the Court will construe it as such. Rule 54(b) permits a court to revise its interlocutory decisions before the entry of a judgment adjudicating all of the claims and all of the parties' rights and liabilities. Judicial Watch v. Dep't of the Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006); see Fed. R. Civ. P. 54(b). This rule "recognizes [the district court's] inherent power to reconsider an interlocutory order 'as justice requires.'" Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,

---

[2] Although the Court could treat the defendant's motion as conceded pursuant to Local Civil Rule 7(b) because the plaintiff has not filed an opposition, the Court will decide the motion on the merits due to the significance of the Court's ruling to the outcome of this case.

630 F.3d 217, 227 (D.C. Cir. 2011). "'As justice requires' indicates concrete considerations of
whether the court 'has patently misunderstood a party, has made a decision outside the
adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but
of apprehension, or where a controlling or significant change in the law or facts [has occurred]
since the submission of the issue to the court.'" Judicial Watch, 466 F. Supp. 2d at 123 (quoting
Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)). The court's ultimate inquiry is whether
relief is "necessary under the relevant circumstances." Lindsey v. District of Columbia, __ F.
Supp. 2d __, __, 2012 WL 3024976, at *2 (D.D.C. 2012) (Walton, J.) (quoting North v. DOJ,
810 F. Supp. 2d 205, 207 (D.D.C. 2011)). The Court finds that reconsideration and revision of
its earlier order under Rule 54(b) is in the interest of justice because, as discussed more fully
below, the facts relevant to the Court's determination of this issue are significantly different than
those relied on by the Court in its initial decision.

      A plaintiff's potential recovery in an action brought pursuant to the FTCA is generally
limited to the amount sought in the administrative claim. See 28 U.S.C. § 2675(b). Damages in
excess of this amount are possible only if the plaintiff can show that "the increased amount is
based upon newly discovered evidence not reasonably discoverable at the time of presenting the
claim to the federal agency, or upon allegation and proof of intervening facts, relating to the
amount of the claim." Id. Under this narrow exception, "newly discovered evidence" is
"evidence that materially differs from the worst-case prognosis of which the claimant knew or
could reasonably have known when [s]he filed the claim, not evidence that merely bears on the
precision of the prognosis." Mem. Op. at 18 (quoting Calva-Cerqueira v. United States, 281 F.
Supp. 2d 279, 302 (D.D.C. 2003)). For example, "intelligence which serves only to bear out
earlier suspicions" and "[d]iagnoses which are no more than cumulative and confirmatory of

earlier diagnoses" will not remove the limit on recovery imposed by § 2675(b).  Reilly v. United States, 863 F.2d 149, 171 (1st Cir. 1988).

The plaintiff bears the burden of proving that one or both of the two bases for employing the exception applies.  Hoehn v. United States, 217 F. Supp. 2d 39, 43 (D.D.C. 2002).  A plaintiff cannot meet § 2675(b)'s "stringent" standard "[i]f a plaintiff could have reasonably obtained the information on the specific injuries needed to make out the worst-case scenario when [s]he filed the original claim."  Calva-Cerqueira, 281 F. Supp. 2d at 302.  "[W]hile courts do not charge a claimant with knowing that [which] the physicians could not tell him, the information must not have been discoverable through the exercise of reasonable diligence."  Low v. United States, 795 F.2d 466, 470 (5th Cir. 1986) (internal citation omitted).

When the Court last considered the application of § 2675(b) in this litigation, it concluded that the plaintiff could seek damages in excess of the amount sought in her administrative claim "to the extent that she seeks greater recovery for damages related to her purported post-traumatic stress disorder."  Mem. Op. at 21.  The Court reasoned that the plaintiff's alleged post-traumatic stress disorder constituted "newly discovered evidence" because, like the plaintiff in Zurba v. United States, 318 F.3d 736 (7th Cir. 2003), she was diagnosed with a specific psychological disorder after filing her administrative claim and "there is nothing in the record showing that the plaintiff should have known that she could eventually be diagnosed as suffering from the specific psychological disorder of post-traumatic stress disorder."  Mem. Op. at 20.  The Court's understanding of the timing of the plaintiff's diagnosis was based on her representations in her filings with the Court and her deposition testimony.  See Pl.'s Opp'n Summ. J. at 3 ("Tookes stated in her deposition that she was, in fact, subsequently diagnosed with [post-traumatic stress disorder].");  Pl.'s Opp'n Summ. J., Ex. A at 78:21–79:14

(the plaintiff was diagnosed with post-traumatic stress disorder by Dr. Peterson, who she testified she had been seeing for less than four years).

However, it is now apparent from the medical records subpoenaed by the defendant and included as exhibits submitted with its motion in limine and the plaintiff's failure to contest the conclusions drawn by the defendant from these records, that the plaintiff was diagnosed with post-traumatic stress disorder after the alleged assault on January 21, 2003, but prior to filing her administrative claim. See Def.'s Mem., Ex. E at 9 (records dated June 19, 2003, indicate that the plaintiff was diagnosed with post-traumatic stress disorder). Importantly, the notes from the plaintiff's visit with a medical provider on June 19, 2003, state that the plaintiff refused any follow up for her post-traumatic stress disorder or depression. Id. The plaintiff's medical records also indicate that she was previously diagnosed with post-traumatic stress disorder in the years before the alleged assault. See id. at 7 (records dated September 19, 2002, indicate that the plaintiff was diagnosed with post-traumatic stress disorder). Moreover, these medical records were not part of the factual record in this case when the Court initially considered this issue because the plaintiff failed to produce all of her medical records since January 1, 2003, despite indicating that she had done so in her response to the defendant's interrogatories.[3] See Def.'s Mem., Ex. D at 2.

In light of revelations contained in the medical records subpoenaed by the defendant, the plaintiff cannot meet her burden of showing that her diagnosis of post-traumatic stress disorder was "newly discovered evidence" under § 2675(b). Medical records dated June 19, 2003, two weeks before the plaintiff filed her administrative claim on July 3, 2003, indicate that the

---

[3] While reserving its right to seek relief from the Court for the plaintiff's withholding of these documents, the defendant does not suggest that plaintiff's counsel intentionally withheld these documents, and the Court does not, on this record, infer any willful violation of counsel's duties based on the plaintiff's failure to properly respond to the defendant's discovery requests.

7

plaintiff refused any follow-up for her post-traumatic stress disorder and depression, and therefore, that she had actual knowledge of her post-traumatic stress disorder when she filed her administrative claim. See Def.'s Mem., Ex. E at 9. Even if the plaintiff contested that she had actual knowledge of the diagnosis, she was nevertheless required to exercise "reasonable diligence" in ascertaining her injuries when she filed her claim with the Marshals Service. See Low, 795 F.2d at 470. The plaintiff was receiving medical care that included a psychological component in the weeks immediately before she filed her claim and thus could have easily obtained information about her specific emotional injuries by requesting that information from her medical providers. Nor can the plaintiff rely on Dr. Peterson's subsequent diagnosis of post-traumatic stress disorder because, having already been previously diagnosed with the disorder, Dr. Peterson's diagnosis is "no more than cumulative and confirmatory of earlier diagnoses," and, therefore, cannot be considered "newly discovered evidence." See Reilly, 863 F.2d at 171. The additional facts the defendant has now presented distinguish this case from Zurba, where the plaintiff did not know that she suffered from two specific psychological disorders until after she filed her administrative claim, 318 F.3d at 741, although she knew at the time of the claim that she suffered from emotional distress generally, id. at 739, and therefore warrant a different result. Since the plaintiff cannot show that her post-traumatic stress disorder is "newly discovered evidence" or an "intervening fact[]," her recovery in this case must be limited to the damages sought in her administrative claim.

## B. Expert testimony of Dr. Stephen Peterson

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and in accordance with the Court's November 9, 2009 Order[4], the plaintiff identified Dr. Richard S. Meyer as an expert witness who

---

[4] The Court notes that its order required the plaintiff's expert witness disclosures to be provided to the defendant by November 9, 2009, but the Certificate of Service on the plaintiff's disclosure indicates that it was not provided to the defendant until November 15, 2009.

would provide testimony under Federal Rules of Evidence 702, 703, or 705. Def.'s Mem., Ex. H at 1. Subsequently, the Court ordered the plaintiff to "identify[] all additional witnesses, including her psychological expert, by October 31, 2011." Order, Oct. 4, 2011. In response, the plaintiff provided the defendant with a list of witnesses identified only as "additional witnesses that may be called to testify at trial" that included Dr. Stephen Peterson, the plaintiff's treating psychiatrist. Def.'s Mem., Ex. I at 1. The plaintiff has neither identified Dr. Peterson as an expert witness nor provided the defendant with an expert report prepared by Dr. Peterson.[5] Def.'s Mem. at 15. The defendant now moves to preclude the plaintiff from offering Dr. Peterson's expert testimony because the plaintiff has not properly designated him as an expert witness and because Dr. Peterson lacks knowledge of all relevant information necessary to provide a reliable opinion. Def.'s Mem. at 11.

Federal Rule of Civil Procedure 26(a)(2) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "Rule 26(a)(2) places an affirmative burden on parties to disclose certain information about their testifying experts and to do so in accordance with any schedule the court orders." Antoine v. J.P. Morgan Chase Bank, No. 08-00615, 2009 WL 5842054, at *3 (D.D.C. Aug. 13, 2009). If a party fails to identify a witness as required by Rule 26(a), the party is not permitted to use the witness to provide evidence at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In considering whether the plaintiff's failure to disclose her psychological expert is substantially justified or harmless, the Court considers "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to

---

[5] Because the plaintiff did not file a response to the defendant's motion, the Court accepts the defendant's representation that the plaintiff did not provide the defendant with a notice that she intended to offer Dr. Peterson as an expert witness. Def.'s Mem. at 15.

which allowing the evidence would disrupt the [case]; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." DAG Enters., Inc. v. Exxonmobil Corp., No. 00-0182, 2007 WL 4294317, at *1 (D.D.C. March 30, 2007) (Walton, J.) (quoting S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)).

While the Court is displeased with the plaintiff's apparent disregard of her discovery obligations, the Court's balancing of the above factors leads it to conclude that exclusion of Dr. Peterson's expert opinion is not an appropriate remedy in this case. The defendant is not surprised or prejudiced by the plaintiff's use of Dr. Peterson as an expert witness since the plaintiff notified the defendant that she intended to call Dr. Peterson as a witness, Def.'s Mem. at 11, and identified Dr. Peterson in response to the Court's order for the plaintiff to identify additional witnesses, including her psychological expert, see Def.'s Mem., Ex. I at 1 (referencing the Court's October 4, 2011 order). And, the defendant has already secured an expert opinion to rebut any proffered evidence concerning whether the plaintiff sustained psychological injury resulting from the encounter at issue in this case. See Def.'s Mem., Ex. F (expert report on the plaintiff's psychological injuries performed at the request of the defendant). The defendant also deposed Dr. Peterson, see Def.'s Mem. at 13, and extensively questioned him regarding his opinions and the basis for his opinions about the plaintiff's psychological problems, including presenting him with the defendant's expert report and with the additional medical records that the defendant subpoenaed, see Def.'s Mem., Ex. G at 32:16–56:26. Since the defendant has prepared as if Dr. Peterson was a designated expert, allowing the plaintiff to call Dr. Peterson as an expert witness will not prejudice the defendant and will not delay the trial. Excluding Dr. Peterson's expert testimony, on the other hand, would significantly, if not entirely, undermine the plaintiff's ability to prove causation of her alleged emotional injuries since Dr. Peterson is the

10

plaintiff's only witness, other than the plaintiff herself, who can provide testimony on the subject. Although the plaintiff has offered no reason for her failure to specifically designate Dr. Peterson as an expert witness, and none is apparent from the record, the Court is nonetheless reluctant to sanction the plaintiff's discovery violation by precluding Dr. Peterson's testimony because the balance of the other factors considered by the Court weigh against excluding Dr. Peterson's expert testimony under these circumstances.

The defendant also argues that Dr. Peterson's expert testimony does not satisfy the standard for admissibility. Def.'s Mem. at 13–15. Federal Rule of Evidence 702 governs the admission of expert testimony, and provides that a witness may provide his expert opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Trial courts act as gatekeepers in determining the admissibility of expert testimony under Rule 702, Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999), although "the concerns underlying the court's role as gatekeeper . . . are of lesser import in a bench trial," Stryker Spine v. Biedermann Motech GmbH, 684 F. Supp. 2d 68, 100 n.35 (D.D.C. 2010). In exercising this obligation, the court's inquiry focuses on the relevance and the reliability of expert testimony. Ambrosini v. Labarraque, 101 F.3d 129, 133 (D.C. Cir. 1996). And the standard for admissibility under Rule 702 is both "liberal and flexible." Groobert v. President & Directors of Georgetown College, 219 F. Supp. 2d 1, 7 (D.D.C. 2002) (internal quotation marks omitted).

Since the defendant's objection to Dr. Peterson's expert testimony concerns only the reliability of his testimony, the Court need only address this prong of the admissibility inquiry under Rule 702. The defendant argues that Dr. Peterson's expert testimony is not "based on sufficient facts or data" as required by Rule 702. Def.'s Mem. at 12, 13–15. In support of this contention, the defendant identifies information that it has gleaned from the plaintiff's medical records that Dr. Peterson was not told by the plaintiff, including her history of domestic abuse and her previous diagnoses of post-traumatic stress disorder. Id. at 14. Because Dr. Peterson did not know, and therefore did not consider, other possible causes of the plaintiff's post-traumatic stress disorder, the defendant contends that Dr. Peterson's expert opinion cannot meet the standard for admissibility for expert testimony. Id. at 14–15.

The defendant's objections go to the weight of Dr. Peterson's testimony, not its admissibility. While there must be a "sufficient" factual basis for an expert's testimony, arguments that an expert should have considered other information, performed other tests, or weighed the information differently are not grounds for excluding the testimony entirely. See Ambrosini, 101 F.3d at 140 (holding that failure to eliminate all possible causes of birth defects when expert considered several other possible causes did not render opinion inadmissible); Stryker Spine, 684 F. Supp. 2d at 101 (holding that expert's failure to consider record of prior proceedings concerning the patents, prior art, and file histories of patent applications in patent dispute did not render opinion unreliable); Groobert, 219 F. Supp. 2d at 9 (holding that expert's failure to consider volume of production, number of photographs listed with agencies, and representation by multiple agencies in assessment of photographer's future earning potential went to weight rather than admissibility). Similarly, disagreement between the parties regarding the underlying facts on which an expert opinion is based is not an appropriate consideration in determining admissibility. McReynolds v. Sodexho Marriott Servs., Inc., 349 F. Supp. 2d 30, 42

(D.D.C. 2004). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (quoting Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579, 596 (1993)).

Dr. Peterson's opinion is based on "sufficient facts" to satisfy the standard of admissibility under Rule 702. Dr. Peterson based his opinions of the plaintiff's emotional injuries on the information he has learned in over four years of treating the plaintiff. See Def.'s Mem. at 13. He testified that he had asked the plaintiff about prior traumas, and the plaintiff did not indicate that she had experienced any prior trauma. Def.'s Mem., Ex. G at 55:1–10. The defendant may dispute the facts upon which Dr. Peterson relied at trial and argue that this Court should place little weight in his opinion due to his inaccurate factual premise. Similarly, the defendant may argue to the Court that Dr. Peterson should have considered other information in forming his opinion. But these objections focus on the weight that the Court should accord to Dr. Peterson's opinion, not its admissibility as expert testimony.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the defendant's motion in limine must be granted in part and denied in part. Thus, the plaintiff's potential recovery at trial will be limited to $250,000, the amount she sought in her administrative claim, and the plaintiff may offer Dr. Stephen Peterson as an expert witness on the subject of the plaintiff's alleged emotional injuries resulting from the encounter that is the subject of this litigation.

**SO ORDERED** this 1st day of November, 2012.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.